### A03A1003. DAVIS v. THE STATE.
(589 SE2d 700)

MILLER, Judge.

Following a jury trial, James Lee Davis was found guilty on twenty-six counts of second-degree forgery and one count of racketeering. On appeal he raises 12 enumerations of error, all of which we find to be without merit. Accordingly, we affirm.

Viewed in the light most favorable to the verdict, the evidence reveals that Davis called a ticket agency and claimed that he could sell the agency five admission badges for the 2001 Augusta National Masters golf tournament at a price of $3,500 each. The ticket agency wired $5,000 to Davis's bank account as a down payment on the tickets. Davis then informed the agency that he could sell them four additional Masters badges for $2,500 each. The agency gave Davis an additional $10,000 for those tickets. Davis met the ticket agency representatives with 15 purported Masters badges, and the agency paid Davis an additional $9,000 in cash for the badges. Davis then purported to have five more Masters badges that he would sell to the ticket agency for $2,850 a piece. Just before the agency wired an additional $23,000 to Davis's account for more tickets, however, the agency representatives discovered that all of the badges that Davis had sold to them were fake.

The ticket agency representatives immediately called the police, and the police verified that the badges were in fact fake. The police arrested Davis and, when they went to Davis's home later that day with a search warrant to look for other items involved in the sale and manufacture of counterfeit Masters badges, found 26 more fake Masters badges.

Davis was indicted on one count of racketeering pursuant to the Racketeer Influenced and Corrupt Organizations Act (OCGA § 16-14-1) ("RICO") and on twenty-six counts of second-degree forgery. Prior to trial, the State gave notice of its intent to introduce similar transaction evidence. Four of the similar transactions involved forgery, and one involved a scheme wherein Davis promised to deliver Masters badges to out-of-town purchasers, but never delivered such badges after receiving payment for them. All of these similar transactions were later admitted at trial over objection from Davis's counsel.

During voir dire, the State gave a brief history of RICO as a tool to combat organized crime and asked the jurors whether or not they would be able to put the concept out of their minds that racketeering

must involve the mafia or organized crime. Davis's counsel objected, claiming that the State was inappropriately arguing the law during voir dire, and this objection was overruled. Davis's counsel also objected and moved for a mistrial when the State asked jurors during voir dire about whether they had any prior knowledge regarding the similar transaction where Davis accepted money for Masters badges that he never delivered. The court overruled the objection and denied the motion for mistrial.

In the State's opening statement, the prosecutor mentioned that the State was not going to show that Davis was guilty of racketeering by being a member of the mafia, but by showing that he was guilty of two predicate acts that would satisfy the requirements of the RICO statute. The prosecutor further commented that the court would later instruct them on the law of RICO. Davis's attorney objected and moved for a mistrial, arguing that the State was inappropriately reading and misrepresenting the law to the jury. The court overruled the objection and denied the motion for mistrial.

Davis's wife testified at trial, and while being questioned by the State, she asserted her Fifth Amendment right against self-incrimination in refusing to answer certain questions. Davis's counsel asked for a curative instruction that would indicate that the wife's assertion of her Fifth Amendment rights did not amount to evidence against his client. The trial court declined to give such an instruction and reminded Davis's counsel that he could request a charge that would explain the effect of the witness's exercising her Fifth Amendment right. Davis's counsel then moved for a mistrial, which motion the court denied.

Davis's counsel repeatedly objected to the State's closing argument. On the first occasion, the prosecutor told the jurors that they should only deliberate based on the evidence in the case, and that if any juror considered things outside of the evidence, such as whether or not it is legal to resell tickets in other States, the other jurors should report that juror to the judge. Davis's attorney objected, arguing that the prosecutor was inappropriately telling the jurors how to deliberate, and the court overruled this objection. Later on in the State's closing argument, the prosecutor referred to Davis as a "liar" based on the similar transaction evidence involving forgery. Davis's counsel objected and moved for a mistrial, claiming that the prosecutor was attempting to place Davis's character in evidence. The court overruled the objection and denied the motion for mistrial, reminding Davis's counsel that the court would instruct the jurors again on the proper consideration of similar transaction evidence. The prosecutor then went on to comment on Davis's wife invoking the Fifth Amendment as a means of avoiding answers to questions after she had contradicted herself on the witness stand. Davis's counsel again objected

and asked for a curative instruction, and the trial court again overruled the objection. Finally, the prosecutor mentioned the similar transaction involving Masters badges where Davis had been arrested but never prosecuted, commenting that, based on the evidence presented, he believed that the case should have been prosecuted. Davis's counsel objected and requested a curative instruction, urging that the prosecutor was improperly asserting his personal opinion on the evidence. The court overruled the objection, and the jury found Davis guilty on all counts.

Davis filed a motion for new trial and, at the hearing on the motion, argued that he received ineffective assistance of counsel. Davis's trial counsel testified at the motion for new trial hearing that he met with Davis on several occasions, discussed witnesses and trial strategy with him, and investigated the backgrounds of the alleged victims, and that, contrary to Davis's testimony at the hearing, Davis never told him any story about purchasing the Masters tickets from another individual under the mistaken impression that the tickets were real. Davis's counsel also testified that he met with Davis's wife on a few occasions to interview her regarding her testimony but did not advise her one way or another about whether or not she should testify because he was not her attorney and the decision was entirely hers. The court denied Davis's motion for new trial, and Davis appeals.

1. In his first and third enumerations, Davis challenges his convictions for forgery and racketeering. Specifically, he contends that the evidence was insufficient to sustain his conviction for second-degree forgery, and that the State failed to prove the requisite predicate acts necessary to sustain a RICO violation. We disagree.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Pursuant to OCGA § 16-9-2 (a), a person commits second-degree forgery "when with the intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority."

Based on the evidence here, Davis represented that he had authentic Masters badges that were actually fake. Besides the fake badges that he sold and attempted to sell to the victims here, Davis

also had 26 more fake Masters badges in his home. The jury was free to believe or disbelieve the defense theory that, although the badges were fake, Davis did not know that they were fake. The evidence sufficed to sustain the conviction for second-degree forgery. See, e.g., *Johnson v. State*, 211 Ga. App. 151, 152 (438 SE2d 657) (1993) (circumstantial evidence of guilt sufficient to sustain conviction for first- and second-degree forgery where reasonable hypotheses of innocence excluded by the evidence).

To prove a RICO violation, the State was required to show that Davis engaged in at least two predicate criminal acts that would amount to racketeering activity as defined in OCGA § 16-14-3 (9). See *Jones v. State*, 252 Ga. App. 332, 333 (1) (556 SE2d 238) (2001). Here, the evidence reveals at least four such predicate acts — three incidents of theft by deception for Davis receiving money on three different occasions for the various sets of fake Masters tickets (see OCGA §§ 16-8-3; 16-14-3 (9) (A) (ix)), and one incident of first-degree forgery for making the fake badges and delivering them to the victims for payment (see OCGA §§ 16-9-1 (a); 16-14-3 (9) (A) (viii)). The evidence sufficed to sustain the RICO conviction.

2. In his second enumeration, Davis contends that he was denied effective assistance of his trial counsel. Specifically, he urges that his trial counsel was ineffective for failing to (a) call a witness that allegedly would have testified that he sold the fake Masters badges to Davis and that Davis had no idea that the badges were fake, (b) adequately prepare for trial, as evidenced by his failure to properly prepare Davis's wife to testify, which resulted in Davis's wife invoking the Fifth Amendment on the witness stand, and (c) investigate the victims' backgrounds to determine if their business was legitimate. We disagree.

To prove ineffective assistance, Davis was required to show that counsel's performance was deficient and that this deficient performance prejudiced his defense. *Ellison v. State*, 242 Ga. App. 636, 638 (7) (530 SE2d 524) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The trial court's determination with respect to counsel's effectiveness will be upheld on appeal unless clearly erroneous. *Jackson v. State*, 209 Ga. App. 53, 56 (7) (432 SE2d 649) (1993). Here, evidence supported the trial court's finding that Davis did not meet his burden of showing deficient performance or prejudice based on his counsel's actions.

(a) Davis's counsel testified at the motion for new trial hearing that he discussed witnesses and trial strategy with Davis, but that Davis never told him about any alleged witness who would have testified that Davis purchased the fake Masters badges from him. Moreover, this alleged witness did not testify at the hearing. Strategic decisions regarding what witnesses to call after consultation with the

client are virtually unchallengeable, and evidence supported the trial court's finding that Davis did not carry his burden of proving ineffectiveness of his trial counsel. See *Smart v. State*, 253 Ga. App. 649, 656 (10) (b), (d) (560 SE2d 92) (2002); cf. *Baker v. State*, 251 Ga. App. 377, 378-379 (2) (554 SE2d 324) (2001) (no ineffective assistance where, among other things, alleged witness who would have provided exculpatory testimony did not testify at motion for new trial hearing).

(b) Davis's counsel testified that he met with Davis on several occasions, and even met with Davis's wife to discuss whether or not she wanted to testify, prior to trial. The State, not Davis, called Davis's wife as a witness, and Davis's counsel even objected and moved for a mistrial when Davis's wife invoked the Fifth Amendment, in an attempt to remove any suspicion from jurors' minds that the witness's use of the Fifth Amendment carried any negative implications for his client. Again, counsel's decisions regarding what witnesses to call after consultation with the client, and all other matters of trial strategy, are the exclusive province of the attorney and do not amount to ineffective assistance. See, e.g., *Mack v. State*, 242 Ga. App. 256, 257-258 (2) (a), (c) (529 SE2d 393) (2000). The record reveals that Davis's counsel was adequately prepared for trial, and evidence supported the trial court's conclusion that Davis did not carry his burden of showing deficient performance or harm from his counsel's actions. Id.

(c) Davis's counsel testified that he did in fact investigate the backgrounds of the victims. He even cross-examined witnesses at trial to raise the inference with the jury that the victims may not have been legitimate businessmen. Evidence supported the trial court's conclusion that Davis failed to carry his burden of proving ineffectiveness of his trial counsel. See *Peterson v. State*, 253 Ga. App. 390, 393-394 (5) (a) (559 SE2d 126) (2002) (no ineffective assistance where information that trial counsel allegedly failed to obtain was otherwise elicited through cross-examination).

3. In his fourth and fifth enumerations, Davis argues that the trial court erred in allowing the State to ask jurors during voir dire about whether they had any knowledge about a similar transaction involving Davis, and in allowing the State to comment on the parameters of RICO. We disagree.

The single purpose for voir dire is to ascertain the impartiality of jurors and their ability to treat the case on the merits with objectivity and freedom from bias and prior inclination. *Speed v. State*, 270 Ga. 688, 691 (7) (512 SE2d 896) (1999). The control of the pursuit of such determination is within the sound legal discretion of the trial court, and we will not disturb such determination on appeal absent manifest abuse. Id. The State and the defendant have the right to examine

each juror and inquire as to "any matter or thing which would illustrate any interest of the juror in the case, including any opinion as to which party ought to prevail, . . . [and] any fact or circumstance indicating any inclination, leaning, or bias which the juror might have respecting the subject matter of the action or the counsel or parties thereto. . . ." OCGA § 15-12-133.

We find no manifest abuse of discretion here. Contrary to Davis's contention that the State crafted questions that called for legal arguments and for the prospective jurors to prejudge the case, the record reveals that (1) the State only mentioned RICO to determine whether prospective jurors had preconceived notions regarding the subject matter of the case, and (2) the question regarding the similar transaction was specifically framed to determine only whether the prospective jurors had any prior knowledge about that transaction. The trial court did not abuse its broad discretion in allowing the State's voir dire questioning.

4. In his seventh enumeration, Davis claims that the trial court erred in denying his motion for mistrial when the State argued the parameters of RICO during its opening statement. However, the record indicates that the State made reference to RICO only in the context of what the State intended to prove at trial through the evidence, and even reminded the jurors that the court would instruct them on the parameters of the law. "A prosecuting attorney in an opening statement may state what he expects in good faith the evidence will show during trial of the case." (Citations and punctuation omitted.) *Ross v. State*, 233 Ga. App. 26, 27 (1) (503 SE2d 308) (1998). We discern no abuse of discretion in the trial court's refusal to grant Davis's motion for mistrial.

5. Davis contends in his eighth enumeration that the trial court erred in denying his motion for mistrial when the State attempted to question Davis's wife after she invoked the Fifth Amendment while on the witness stand. He argues that his wife's use of the Fifth Amendment could have been interpreted as evidence against him, and without a curative instruction, Davis's own Fifth Amendment right against self-incrimination was violated. We disagree.

Davis's wife's use of the Fifth Amendment goes to her own concerns about self-incrimination, not to Davis's, and the court did not err in allowing the State to question the witness even after she invoked the Fifth Amendment. See *Bowen v. State*, 194 Ga. App. 80, 81 (2) (389 SE2d 516) (1989) (State allowed to ask questions of witness after he invoked Fifth Amendment because witness only invoked Fifth Amendment with respect to certain questions). Moreover, the court instructed Davis that he could request a charge on the scope of the Fifth Amendment right against self-incrimination, and the record does not indicate that he requested such a charge. The

trial court did not abuse its discretion in denying Davis's motion for mistrial.

6. In his sixth enumeration, Davis argues that the court erred in admitting evidence of similar transactions. We disagree.

Before similar transaction evidence can be introduced, the State must make three affirmative showings as mandated by *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

> First, the State must demonstrate that it seeks to introduce such evidence for an appropriate purpose, such as illustrating appellant's identity, intent, course of conduct, and bent of mind; second, the State must show sufficient evidence to establish that the accused committed the independent offense or act; third, the State must demonstrate a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

(Citation, punctuation and footnote omitted.) *Davis v. State*, 244 Ga. App. 708, 711 (3) (536 SE2d 596) (2000). The first and third showings are at issue here, as Davis challenges the purpose for which the transactions were introduced and the degree of similarity between the incidents. The State purported to introduce the similar transactions to show Davis's bent of mind and course of conduct, rebutting the defense theory that the incident with the fake Masters badges occurred by mistake. Each of the five similar transactions showed Davis's bent of mind and course of conduct in appropriating the identities of others for personal profit, and the jury could infer from this evidence a course of conduct through which Davis intended to create the fake Masters badges for personal profit as well. See *Huff v. State*, 248 Ga. App. 233-234 (546 SE2d 24) (2001).

With respect to the similarity requirement:

> The law does not require that a similar transaction crime be identical to the crime charged. There can be substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar. The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. The State may only have the burden of showing a *logical connection* between crimes which are essentially dissimilar. When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the

test of admissibility than when such evidence is being introduced to prove identity.

(Citation omitted; emphasis in original.) *Huff*, supra, 248 Ga. App. at 233.

All of the similar transactions here were used, not to show identity, but to show bent of mind and course of conduct. Four of the five transactions involved forgeries through which Davis appropriated the checks of other people and attempted to profit from those checks, and here he attempted to profit from tickets that were constructed to resemble those created by Augusta National golf course. The final transaction even involved a scheme wherein Davis represented to potential buyers that he had Masters badges to sell to them, which he never delivered. The trial court did not abuse its discretion in admitting the similar transaction evidence. *Huff*, supra, 248 Ga. App. at 235.

7. In his final four enumerations, Davis urges that the trial court erred in overruling his several objections and denying his motion for mistrial during the State's closing argument. He contends that (a) the court should have prevented the State from improperly telling jurors that they should report to the judge any jurors who based their deliberations on matters that were not in evidence, (b) the court should have granted Davis's motion for mistrial after the prosecutor called Davis a "liar" during closing argument, (c) the court should not have allowed the State to comment during closing argument on Davis's wife invoking the Fifth Amendment during trial, and (d) the court should not have allowed the prosecutor to comment during closing argument that Davis should have been prosecuted for the similar transaction involving the undelivered Masters badges. We find these contentions to either be without merit or involve matters that resulted in no harm to Davis, and therefore discern no reversible error.

(a) The transcript reveals that the prosecutor's statement that the jury should only deliberate based on the evidence presented at trial and the law they are given was consistent with the instructions given to the jurors by the court. The court further instructed the jurors that the arguments of the attorneys were not evidence. Davis has presented no evidence that the prosecutor's additional comment that jurors should report to the judge any jurors who deliberated based on matters outside of the law and evidence had any effect on the jurors' deliberations. Indeed, no jurors reported any alleged misconduct to the judge based on the prosecutor's statement or gave any other indication that they were somehow influenced by the statement. Even if the court committed error in allowing the statement, Davis merely speculates that the prosecutor's comment resulted in

harm to him, and "[h]arm cannot be shown by mere speculation and conjecture unsupported by the record." (Punctuation and footnote omitted.) *Williams v. State*, 248 Ga. App. 628, 632 (4) (548 SE2d 350) (2001).

(b) The State was entitled to comment on the similar transactions involving forgery during its closing argument, since these transactions were properly admitted at trial. See, e.g., *O'Neal v. State*, 170 Ga. App. 637, 638 (2) (318 SE2d 66) (1984). The State was further authorized to make an argument that Davis was dishonest, as a reasonable deduction from the evidence presented. See *Cooper v. State*, 178 Ga. App. 709, 711-712 (3) (345 SE2d 606) (1986) (prosecutor could properly refer to defendant as a "pervert" and "loan shark" during closing argument based on reasonable inferences raised by the evidence at trial). The trial court did not abuse its discretion in denying Davis's motion for a mistrial based on the prosecutor's comments.

(c) As we held in Division 5, the trial court committed no error in allowing the State to question Davis's wife after she invoked the Fifth Amendment, and the wife's invocation of her own Fifth Amendment right against self-incrimination was unrelated to Davis's own right. The fact that the State alluded in closing argument to Davis's wife refusing to answer certain questions at trial, which is exactly what occurred, was not error.

(d) Although statements during closing argument regarding what the prosecutor personally thinks are improper, a prosecutor may make permissible inferences based on the evidence. *Hildebrand v. State*, 209 Ga. App. 507, 509 (3) (b) (433 SE2d 443) (1993). Even if a deduction drawn from the evidence is illogical, unreasonable, or even absurd, such argument is a matter for reply by opposing counsel and not rebuke by the court. See *Cooper*, supra, 178 Ga. App. at 712 (3). Based on the facts in the record and the deductions derived therefrom, an attorney may make almost any form of argument he desires. See id.

Here the prosecutor deduced and stated that, based on the evidence presented, the prior situation involving the Masters badges warranted prosecution. Although the statement was made in an inartful way, and the use of terms such as "I think" should have been avoided, the prosecutor was authorized to comment on an inference raised by the evidence. See, e.g., *Brooks v. State*, 243 Ga. App. 246, 252 (2) (532 SE2d 763) (2000). Moreover, in light of the court's several instructions on the proper consideration of similar transaction evidence, we discern no harmful error from the prosecutor's comment that would warrant reversal, even if the comments on the similar transaction were improper. Cf. *Lowe v. State*, 245 Ga. App. 659, 661 (3) (538 SE2d 552) (2000).

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED NOVEMBER 14, 2003.

*Ellis R. Garnett,* for appellant.
James L. Davis, *pro se.*
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.