## S05A0223. SMITH v. THE STATE.
### (610 SE2d 26)

FLETCHER, Chief Justice.

A jury in Bartow County convicted Christopher Matthew Smith of malice murder, false imprisonment, armed robbery, and other crimes related to the shooting death of Ed Shockley and an associated crime spree.[1] On appeal, Smith contends, among other things, that

---

[1] The crimes were committed on or near March 30, 1995. On May 5, 1997, a Stephens County grand jury indicted Smith for malice murder, two counts of burglary, kidnapping, two counts of false imprisonment, armed robbery, criminal attempt to commit armed robbery, theft by taking, and two counts of possession of a firearm during the commission of a felony. On July

the State improperly commented on his failure to testify. Finding no error, we affirm.

1. The evidence presented at trial shows that during the week preceding the crimes, Smith stole a gun from the house of an acquaintance. On March 30, 1995, Smith entered the house where Dr. Paul Nichols lived with his wife, Mary, and robbed Dr. Nichols of his wallet and car keys at gunpoint. He then used tape to subdue both Paul and Mary Nichols, stole their Cadillac, and fled.

A short time later, Smith entered Ed Shockley's home. Shockley's wife, Laurell, heard repeated gunfire coming from near the front door of their home, and then heard Ed screaming. She ran to the scene and found Ed, who later died from his wounds, lying in a pool of blood.

Smith then fled to Florida, where he was eventually apprehended after committing a series of additional crimes.[2] During his arrest, Smith admitted several times to police that he had shot Ed Shockley "six or seven times."

After reviewing the evidence in the light most favorable to the jury's verdict, we conclude that there was sufficient evidence for a rational trier of fact to find Smith guilty of the crimes for which he was convicted.[3]

2. Smith contends that the State improperly commented on his failure to testify by stating during closing argument that Smith had shown no remorse for his crimes. "As a rule of both constitutional law and Georgia statutory law, a prosecutor may not make any comment upon a defendant's failure to testify at trial."[4] Generally, comments by the State regarding the defendant's decision not to testify may constitute reversible error if "(1) the prosecutor's manifest intention was to comment on the accused's failure to testify, or (2) the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify."[5]

15, 1997, the State filed notice of its intent to seek the death penalty. On October 7, 1999, the court granted Smith's motion for a change of venue, and the case was transferred to the Bartow County Superior Court. On January 21, 2000, the jury convicted Smith on all counts. On January 26, 2000, the jury found the existence of four statutory aggravating factors, but recommended a sentence of life without parole for malice murder. Smith was sentenced on that same day to life without parole for malice murder, and consecutive terms of years for the remaining convictions. Smith moved for a new trial on February 25, 2000, and amended that motion on January 9, 2004. The trial court denied the motion on March 3, 2004, and Smith filed a timely notice of appeal on March 26, 2004. The case was docketed in this Court on October 4, 2004, and submitted on the briefs on November 29, 2004.

[2] Smith was tried and convicted for his Florida crimes and is currently serving a lengthy prison term in that state. He was present for his Georgia trial as a borrowed prisoner.

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Al-Amin v. State*, 278 Ga. 74, 85 (597 SE2d 332) (2004) citing *Griffin v. California*, 380 U. S. 609, 615 (85 SC 1229, 14 LE2d 106) (1965); OCGA § 24-9-20 (b).

[5] *LeMay v. State*, 265 Ga. 73, 75 (453 SE2d 737) (1995).

But the State and the defendant are given wide leeway during closing argument to argue all reasonable inferences that may be drawn from the evidence.[6] Both before and after the comment regarding Smith's lack of remorse, the prosecutor highlighted facts in evidence showing Smith's cavalier attitude after the crimes. During his arrest, Smith repeatedly laughed, smiled, and bragged about committing his various crimes, including the killing of Mr. Shockley, and proclaimed himself a "natural born killer." Taken in context, the prosecutor's closing argument did not directly or naturally implicate the defendant's decision not to testify, and did not show an intent by the prosecutor to highlight that fact. Rather, the prosecutor was simply making a reasonable inference based on the considerable facts in evidence that showed Smith's lack of remorse. Given the particular facts in evidence, the prosecutor's argument was not improper.

3. Smith also contends that the State failed to give him proper notice of its intent to seek the death penalty, pursuant to Uniform Superior Court Rule 34 (II) (C) (1),[7] after the State re-indicted him under the second indictment. The State cured that omission, however, by formally notifying Smith of its intent to seek the death penalty under the second indictment on July 15, 1997, and properly re-arraigned him on August 19, 1997.[8] Furthermore, Smith did not make any objection at the re-arraignment with respect to the State's notice, and the issue is therefore not preserved for appellate review.[9]

4. Smith next contends that the evidence presented to the grand jury was insufficient to sustain the indictments. This Court, however, has ruled that

> [w]here a competent witness is sworn properly and testifies before the grand jury, and where the defendant is thereafter found guilty beyond a reasonable doubt by a trial jury, the sufficiency of the evidence to support the indictment is not open to question.[10]

---

[6] *Todd v. State*, 261 Ga. 766, 768 (410 SE2d 725) (1991); *Cooper v. State*, 260 Ga. 549, 550 (397 SE2d 705) (1990).

[7] The Rule states that
[a]t the earliest possible opportunity after indictment and before arraignment, the court shall confer with the prosecuting attorney and defense counsel. . . . The following matters shall be concluded during the first proceeding. . . . If the prosecuting attorney intends to seek the death penalty, a written notice of such intentions shall be prepared and filed with the clerk of the superior court. . . .

[8] See *State v. Terry*, 257 Ga. 473, 474 (360 SE2d 588) (1997) ("nothing in the Unified Appeal Procedure forbids a re-arraignment to cure the failure to begin following the Unified Appeal Procedure prior to the original arraignment.").

[9] *Palmer v. State*, 271 Ga. 234, 238 (517 SE2d 502) (1999).

[10] *Moon v. State*, 258 Ga. 748, 753 (7) (375 SE2d 442) (1988).

Smith's argument presents nothing for this Court to review.[11]

5. Smith also claims that the trial court improperly admitted the videotape of his arrest because the State failed to establish a proper chain of custody for the tape. But the testimony of the cameraman established that the videotape was a fair and accurate portrayal of Smith's arrest,[12] and there is no chain of custody requirement for the admission of videotapes.[13]

6. Finally, Smith argues that his custodial statements to police in Florida were improperly admitted because he waived his *Miranda* rights only for the Florida issues, rather than for the issues relevant to his Georgia crimes. But it is not necessary for a valid waiver of the Fifth Amendment privilege that the criminal suspect know and understand every consequence of that waiver.[14] The statement at issue was properly determined to be admissible at a *Jackson v. Denno*[15] hearing, and Smith's arguments otherwise are meritless.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 21, 2005.

*William R. Oliver*, for appellant.

*Michael H. Crawford, District Attorney, Thurbert E. Baker, Attorney General, Raina J. Nadler, Assistant Attorney General*, for appellee.

---

[11] *Felker v. State*, 252 Ga. 351, 366-367 (314 SE2d 621) (1984), overruled on other grounds, *Fleming v. State*, 265 Ga. 541, fn. 4 (458 SE2d 638) (1995).

[12] *Phagan v. State*, 268 Ga. 272, 281 (486 SE2d 876) (1997).

[13] *Gadson v. State*, 263 Ga. 626, 627 (437 SE2d 313) (1993).

[14] *Colorado v. Spring*, 479 U. S. 564, 577 (107 SC 851, 93 LE2d 954) (1987).

[15] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).