## A05A2019. OVERTON v. THE STATE.
(627 SE2d 875)

PHIPPS, Judge.

Jerry Overton was convicted of five counts of first degree forgery. On appeal, he contests the sufficiency of the evidence and a jury instruction. Because no reversible error has been demonstrated, we affirm.

1. "A person commits the offense of forgery in the first degree when with intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority and utters or delivers such writing."[1] On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdicts, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the charged offenses.[2]

Overton was charged with uttering checks drawn upon James Pollard's bank account without Pollard's authority. A business owner testified that during March and April 1997, a man claiming to be James McCladdie came into his business and presented five checks made payable to James McCladdie and drawn on the account of Pollard. Without verifying identification, the business owner cashed the checks for a fee. The checks were later returned by the bank to the business stamped "Forged." The business owner identified Overton as the man purporting to be James McCladdie.

Pollard testified that he had not written any of the five checks at issue and had not authorized anyone else to do so. He stated that the only people who had access to the inside of his home, where he kept his checkbook, were his wife, their children, his brother, his wife's brother Overton, and Overton's girlfriend. Pollard recalled that around the time the checks were cashed, James McCladdie was adding a room to his house. When Pollard discovered that the checks had been forged, he reported the matter to law enforcement.

An investigator with the county sheriff's department testified that his investigation led him to suspect and then arrest Overton and his girlfriend. The investigator interviewed Overton, and Overton admitted that he had personally cashed at the business one or two of

---

[1] OCGA § 16-9-1 (a).
[2] *Davis v. State*, 264 Ga. App. 128, 130 (1) (589 SE2d 700) (2003); see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Pollard's checks that had been made payable to James McCladdie. He also admitted that he had once sent his girlfriend to that same business to cash a check written on Pollard's account, claiming that she had "no idea what was going on." An audiotape of Overton's interview was played for the jury.

Overton called no witnesses, but took the stand and denied that he had forged any check on Pollard's account. Overton explained that he had told the investigator otherwise only to protect his girlfriend from being charged in the matter. He admitted that he had been inside Pollard's house many times and that he had known that James McCladdie was doing construction work on the home.

Overton points to what he claims are conflicts and weaknesses in the evidence. But resolving evidentiary conflicts is for the jury.[3] "[W]e do not speculate which evidence the jury chose to believe or disbelieve."[4] The presence of competent evidence to support each element of the offenses charged and for which Overton was convicted requires a conclusion that the evidence was sufficient.[5]

2. Overton contends that the trial court erred when it included in its final charge to the jury the statement, "[Y]ou are not bound to believe testimony as to facts incredible, impossible or inherently improbable." He points out that this charge should be given only in extraordinary cases and where there is testimony that runs "contrary to the great physical laws of the universe."[6] This case, Overton asserts, is not one of those cases.

The record reveals, however, that after the court completed its final charge, it asked whether there were any objections. Overton's counsel answered, "No sir, Your Honor." Generally, "[w]here objections are requested, the failure to either object or to reserve the right to later object amounts to a procedural default barring appellate review of the charge."[7] Because Overton's counsel failed to do both, Overton attempts to invoke exceptions to this general waiver rule embodied in OCGA §§ 5-5-24 (c) and 17-8-57.

OCGA § 5-5-24 (c) requires appellate courts to consider and review an erroneous charge regardless of whether objection was made where there has been a substantial error harmful as a matter of law.

---

[3] See *Davis*, supra.

[4] *Watson v. State*, 235 Ga. App. 381, 384 (1) (509 SE2d 87) (1998) (citation and punctuation omitted).

[5] See *Davis*, supra.

[6] For discussions on charging the contested statement, see *Patton v. State*, 117 Ga. 230, 234-237 (5) (43 SE 533) (1903); *Stephens v. State*, 245 Ga. App. 823, 825-826 (4) (538 SE2d 882) (2000); *Brandon v. State*, 241 Ga. App. 887, 888-890 (2) (528 SE2d 809) (2000).

[7] *Leggon v. State*, 249 Ga. App. 467, 470 (2) (549 SE2d 137) (2001) (punctuation and footnote omitted).

This standard requires an appellant to show that "the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial."[8]

Under OCGA § 17-8-57, "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[9] Failure to object to an alleged violation of this Code section does not waive the right to assert error on appeal in the case of plain error.[10] This standard requires Overton to show error which is "so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding."[11]

The statement at issue should not have been included in the final charge.[12] However, in light of the strength of the evidence against Overton and considering the court's charge in its entirety, we find that Overton has failed to show substantial error harmful as a matter of law and plain error, as contemplated by OCGA §§ 5-5-24 (c) and 17-8-57, respectively.[13] The record shows that the court adequately instructed the jury not to interpret any comment by it as an expression or intimation of opinion upon what had or had not been proven. In addition, the court amply instructed the jury on the credibility of the witnesses, the weight of the evidence, and impeachment of a witness by contradictory statements previously made by that witness. Under these circumstances, Overton's failure to preserve the error thus constitutes a waiver of this issue.[14]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

---

[8] *Colkitt v. State*, 251 Ga. App. 749, 752 (2) (555 SE2d 121) (2001) (citation and punctuation omitted).

[9] See also *Jones v. State*, 277 Ga. 36, 39 (4) (586 SE2d 224) (2003).

[10] *Paul v. State*, 272 Ga. 845, 848-849 (3) (537 SE2d 58) (2000).

[11] *Lynd v. State*, 262 Ga. 58, 61 (8), n. 2 (414 SE2d 5) (1992) (citation and punctuation omitted).

[12] See cases cited in footnote 6, supra.

[13] See *Tanksley v. State*, 248 Ga. App. 102, 105 (3) (545 SE2d 652) (2001).

[14] See id.; compare, e.g., *Paul*, supra at 845-849 (1), (3) (where trial judge took on a prosecutorial role in the trial by its questions and comments, intimating his opinion as to the credibility of witnesses and the guilt of the defendant, the trial judge's violation of OCGA § 17-8-57 seriously affected the fairness, integrity, and public reputation of the judicial proceedings); *Jones v. State*, 252 Ga. App. 332, 334 (2) (556 SE2d 238) (2001) (error in charge was blatantly apparent and prejudicial to the extent that it raised a question whether the defendant was deprived, to some extent, of a fair trial, where the judge, after charging the jury on reasonable doubt consistent with the suggested pattern instruction, summarized, "In other words, if you honestly believe he's guilty, convict him. If you honestly believe he is not guilty, find him not guilty.") (punctuation omitted).

DECIDED MARCH 1, 2006.

*Peter D. Johnson*, for appellant.

*Daniel J. Craig*, District Attorney, *Charles R. Sheppard*, Assistant District Attorney, for appellee.