## A08A2348. HARRIS v. THE STATE.
## A08A2349. GRAY v. THE STATE.
### (675 SE2d 236)

ADAMS, Judge.

Deroski Harris and Antonio Deshun Gray appeal following denial of their motions for new trial, after they were convicted of armed robbery and possession of a firearm during the commission of a crime. Harris argues on appeal that the evidence was insufficient to support his convictions,. that the trial court erred in admitting a recording of a 911 phone call into evidence and that in closing argument the prosecutor improperly asserted an important fact in a manner that was against the evidence. As his sole argument on appeal, Gray contends that the trial court erred in allowing the State to cross-examine his character witnesses on his juvenile record.

Viewed in the light most favorable to support the verdict, the evidence showed that on the night of February 14, 2006, Sonya Anderson was working as a cashier at the Money Back #50 convenience store in Troup County. While Anderson was in the back office, she heard the doorbell ring indicating that someone had come into the store. Before she could turn around, a man came up behind her and grabbed her, put a gun to her head and demanded to know where she kept the money. Anderson told him it was in the front of the store, and he took her behind the counter to the cash register, where she noticed a second man with a gun standing on the other side of the counter.

The first man ordered Anderson to hand the register drawer to the other man. When the first man insisted that there was more money in the store, she told him that she did not have access to the safe, but there was money in a separate drawer for the lottery.

During this discussion, the first man began taking Newport brand cigarettes from a rack. After Anderson removed the lottery register drawer and handed it to him, both men left the store. Anderson testified that the men left the store with money, cigarettes and lottery tickets. Anderson then returned to the office and called police, giving a description of the two men. The State played a surveillance video showing these events for the jury at trial.

The manager of the Money Back #50 reported the stolen tickets to the Georgia Lottery Corporation. A lottery investigator determined that approximately forty-five minutes after the robbery, lottery tickets from one of the partial rolls of stolen tickets were cashed at the Money Back #4, another Troup County convenience store. Two of the cashed tickets had been reported stolen, while the third was the ticket just before the range of stolen tickets, but all three came from the same roll.

Police reviewed the surveillance tapes from the Money Back #4 and identified Harris, Gray and a third man, Michael Roman, as being in the store at the time the tickets were cashed. Troup County Sheriff's Deputy Mark Lott testified that Harris and Gray also met the general physical description of the robbers given by Anderson, as well as his own observations of the robbers on the surveillance tape from the Money Back #50.

Michael Roman testified at trial that he went to the Money Back #4 that night to use the pay phone. He saw Harris, Gray and a third man arrive at the store in a vehicle. Roman said he did not know any of the men previously. Nevertheless, Harris and Gray approached him and asked if he would cash a lottery ticket for them. Gray told Roman that he had problems in the past with one of the store clerks, and he did not think the clerk would cash the ticket for him. Roman went into the store and cashed a $50 lottery ticket, and Harris and Gray gave him $5 in return. While in the store, Roman saw Harris pass something through the window to the cashier. Harris then gave Roman money to buy beer. As Harris was handing over the cash, he dropped "a lot of money," in different denominations, onto the floor. The State also played the surveillance tape from the Money Back #4 for the jury.

Later, police showed Anderson a lineup with six photographs, including Gray's picture. She positively identified Gray as the man who came behind the counter during the robbery. She was unable to identify the other man, who had been wearing a mask, from a second photographic lineup that included Harris's picture. Anderson was able, however, to identify a jacket which she said the man behind the counter had worn. Although the man was wearing a sweatshirt over the jacket, Anderson could see a portion of the jacket when he reached up for cigarettes. Gray was wearing the jacket at the time of

his arrest. Gray also had money and a pack of Newport cigarettes, the brand stolen in the robbery. Harris, too, had money and a partial pack of Newport cigarettes when he was arrested.

George Teaver testified that his Chrysler van was stolen from his driveway after 7:00 or 8:00 on the evening of the robbery.[1] Teaver lives next door to the house Harris shared with his mother. Teaver's van was recovered two days later on a dirt road approximately one-quarter mile from the Money Back #50. Police recovered two sets of keys from the van, which were later identified as keys kept in the Money Back #50's lottery drawer. The keys were in the drawer on the night of the robbery. Police also found the store's two cash drawers in the woods approximately 100 to 130 feet from the van's location.

Harris and Gray both testified at trial that at the time of the robbery, they were hosting a party at Gray's house. Harris said that Roman called to ask if he could buy some cocaine, and they arranged to meet at the Money Back #4. Gray said that at about 9:00 p.m. when the party got crowded, he gave his brother some money to buy more alcohol. Harris and Gray then got a ride to the Money Back #4 around 9:30 or 10:00 p.m. with a female friend, who did not testify at trial. Harris said he sold Roman the drugs in exchange for two lottery tickets. Harris followed Roman into the store and watched him cash a lottery ticket, then Harris cashed the two tickets Roman had given him. Gray said he went inside to buy the woman some gas and to get some beer. He met Roman, who had come inside with lottery tickets. He said that Roman gave him some money from the lottery ticket. Harris and Gray then returned to the party. Gray said that the police came later and gave out citations to underage partygoers who were out past curfew.

The defense put up a number of witnesses. Gray's mother and aunt testified as to his character. Several witnesses, all friends or relatives of the defendants, testified that they were at the party with Gray and Harris, although their estimates differed as to the number of people attending the party, ranging from around 20 to around 100. Two witnesses said that Harris and Gray left the party some time around 9:45 to 10:20 p.m., and two witnesses did not recall them leaving. Gray's brother said he came to the party about 9:00 p.m. after Gray called and asked him to get some alcohol. He saw Gray and Harris at the party at 9:30 p.m. The brother left the party, but came back later and was there when the police arrived. Another witness said that the police came to the house about 2:30 a.m. and told everyone to go inside because it was past curfew.

---

[1] The robbery occurred at approximately 9:45 that night.

In addition, Robert Hall testified that he was at the Money Back #4 that night and saw Harris give Roman drugs in exchange for lottery tickets, although another witness said that she saw Hall at the party that night. Roman was called on cross by the defense, but he denied that he gave Harris lottery tickets in exchange for drugs.

In rebuttal, the State called the officer on duty that night in the zone where Gray's house is located. He said that he would have been the officer to respond to any call about a party. And if he had stopped at a party on his own initiative and issued citations, he would have been required to write a report of the incident. He said that neither he nor any other officer responded to such a call that night, wrote any report about a party, or wrote citations to partygoers at Gray's address that night.

### Case No. A08A2348

1. Harris asserts that this evidence was insufficient to support his convictions. He asserts the evidence against him was circumstantial and that the State failed to exclude every other reasonable hypothesis except that of his guilt. But this argument fails to take into account the jury's role in determining reasonableness.

> [T]he correct rule for determining the sufficiency of the evidence in convictions based entirely on circumstantial evidence is that questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict is unsupportable as a matter of law.

(Citation omitted.) *Williams v. State*, 282 Ga. 561, 562 (1) (651 SE2d 674) (2007). In this case, the jury was not required to believe the defense witnesses who supported Harris's version of events, but could have found, instead, that Harris participated in the robbery and used the cash, tickets and cigarettes stolen from the Money Back #50. See *Austin v. State*, 275 Ga. 346 (1) (566 SE2d 673) (2002). Accordingly, after reviewing the evidence in the light most favorable to the verdict, we find that the evidence was sufficient to authorize a rational trier of fact to find that all reasonable hypotheses save Harris's guilt had been excluded and to find Harris guilty beyond a reasonable doubt.

2. Harris also argues that the trial court erred in admitting the tape of Sonya Anderson's 911 call to police. Harris objected to the

admission of this tape at trial on the ground that it was overly prejudicial and inflammatory. The State countered that the tape was part of the res gestae of the crime, and the trial court allowed its admission. In addition, Harris argued for the first time on motion for new trial that the State failed to lay a proper foundation for the tape's admission. He contends that Anderson's testimony identifying the tape was insufficient alone and that the State was required to provide testimony from the emergency dispatch operator as well.

We find no merit to these arguments. The recording of the 911 call was admissible as part of the res gestae of the crime. See *Key v. State*, 289 Ga. App. 317, 320 (1) (b) (657 SE2d 273) (2008); *Kuyken-doll v. State*, 278 Ga. App. 369, 371 (3) (629 SE2d 32) (2006). Moreover, Harris waived any argument on foundational grounds by failing to object on that basis at trial. "In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground." (Punctuation and footnote omitted.) *Williams v. State*, 270 Ga. App. 480, 481-482 (606 SE2d 671) (2004). Even if Harris had properly preserved this issue for appeal, however, his argument is meritless. An audiotape of a 911 call can be authenticated by the testimony of one who was a party to the conversation recorded on the tape. *Hudson v. State*, 273 Ga. 124, 127 (3) (538 SE2d 751) (2000).

3. Harris next asserts that in closing argument the prosecutor argued an important fact in a manner that was against the evidence. One of the three tickets cashed at the Money Back #4 was not listed as stolen by the Money Back #50 manager; rather it was the ticket on the roll immediately before the tickets listed as stolen. In attempting to explain this anomaly, the prosecutor argued that the ticket may have been purchased before while the "joint was being cased" or that the manager may have made a mistake in reporting the stolen tickets. Harris objected to this argument on the ground that there was no evidence that the ticket had been stolen, but the trial court overruled the objection.

Counsel "are given wide leeway during closing argument to argue all reasonable inferences that may be drawn from the evidence." (Footnote omitted.) *Smith v. State*, 279 Ga. 48, 50 (2) (610 SE2d 26) (2005). "Even if a deduction drawn from the evidence is illogical, unreasonable, or even absurd, such argument is a matter for reply by opposing counsel and not rebuke by the court." (Citation omitted.) *Davis v. State*, 264 Ga. App. 128, 136 (7) (d) (589 SE2d 700) (2003).

While there was no direct evidence that the lottery ticket had been stolen, there was also no direct evidence that it was legally purchased. The ticket came from the same roll as the stolen tickets.

YALE LAW LIBRARY

The lottery investigator testified that there is no way to determine when a particular lottery ticket has been sold or even whether it had been sold or stolen. He relied upon the report from the store manager to determine the stolen tickets. The State's argument, therefore, was a permissible inference from the evidence.

### Case No. A08A2349

4. Gray argues the trial court erred in allowing the State to cross-examine his two character witnesses regarding alleged prior juvenile offenses. When the prosecutor began to cross-examine Gray's mother regarding these offenses, Gray's attorney objected to the use of his juvenile record, and an off-the-record discussion was held at the bench. Following that conference, the trial court allowed the cross-examination to continue. The State asked Gray's mother about her knowledge of juvenile adjudications for arson, burglary, theft by taking, shoplifting, reckless conduct and disorderly conduct. The prosecutor also asked whether she knew about a fight involving Gray at a recreation center. His aunt was similarly questioned, without objection.

As Gray concedes, when a defendant presents witnesses as to his good character, the State is entitled to cross-examine as to his juvenile record to impeach such testimony. *Redman v. State*, 281 Ga. App. 605, 606 (2) (636 SE2d 680) (2006); *Williams v. State*, 171 Ga. App. 927, 928 (2) (321 SE2d 423) (1984). Nevertheless, he notes that in order to utilize such evidence, the State "is *required* to demonstrate that the questions were asked in good faith, and based on reliable information that can be supported by admissible evidence." (Citation omitted; emphasis supplied.) *Christenson v. State*, 261 Ga. 80, 90-91 (8) (c) (402 SE2d 41) (1991). Gray asserts that the trial court erred when it did not require the State to present such evidence at trial.

Although the original bench conference was held off the record, the prosecutor later stated her intention to perfect the record as to that conference. She indicated that she had submitted case law holding that the use of such evidence was admissible in cross-examining character witnesses. She said that she "also represented to the Court that I had actual police reports regarding some of those incidents, and I did submit to the Court the actual juvenile record to look at and that I only questioned on offenses that had been adjudicated." The judge replied that he would let the record show that the State did show him those documents, but he did not remember looking at the juvenile record:

> . . . I don't remember seeing the actual juvenile record that

you said you showed me. I think you had one out there. I don't know if I remember seeing it. It didn't make any difference[.] [W]hat I took into consideration was what I believed the law was and I believe the law was in that set of circumstances, you can bring those things up regardless whether you had shown it to me or not. . . . It wasn't so much a ruling on what you showed me. It was ruling on the — I did a little quick research on my own and decided that it was admissible.

From this statement, it is clear that the trial court did not require the State to show that it had a good faith basis for this line of questioning nor did it consider such evidence in ruling upon the objection. Rather, the judge found the evidence admissible based upon his own review of the case law. This was error, and we vacate the denial of Gray's motion for new trial on this ground and "remand this case to the trial court for a determination of whether the district attorney can support his questions to the defendant's character witnesses as required." *Medlock v. State*, 263 Ga. 246, 248 (2) (430 SE2d 754) (1993). See also *Christenson v. State*, 261 Ga. at 91 (8) (c).

*Judgment affirmed in Case No. A08A2348. Judgment vacated in part and case remanded with direction in Case No. A08A2349. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 5, 2009.

*Jamie T. Roberts*, for appellant (case no. A08A2348).

*Word & Simmons, Maryellen Simmons*, for appellant (case no. A08A2349).

*Peter J. Skandalakis, District Attorney, Melissa L. Himes, Assistant District Attorney*, for appellee.