## S10A1064. LACEY v. THE STATE.
### (703 SE2d 617)

HUNSTEIN, Chief Justice.

Following a jury trial, appellant Cleondre Lamarr Lacey was convicted of malice murder, felony murder (two counts), armed robbery, aggravated assault (two counts), and possession of a firearm during the commission of a crime in connection with the shooting death of Kenneth Brett Cunningham and shooting injury of Paul Mayhew. Lacey appeals from the denial of his motion for new trial,[1] arguing that the trial court erred by denying two of his requests to charge; that the prosecutor improperly commented on his exercise of his right to remain silent and presented improper victim impact argument and evidence; and that his trial counsel was ineffective in failing to object to the foregoing prosecutorial misconduct. Discerning no error, we affirm.

1. The evidence at trial authorized the jury to find that on the afternoon of March 17, 2007, Cunningham was planning to sell marijuana out of his home to an individual he did not know and asked Mayhew and another friend, Phillip Freeman, to be present. Cunningham, Mayhew, and Freeman were out on the front porch when a man later identified as Lacey arrived in a car driven by Stephanie Buskey. After exiting the vehicle, Lacey approached the house and went inside with Cunningham to retrieve a scale from Cunningham's room. Thereafter, Mayhew and Freeman heard a commotion in the house and Cunningham yelling for help. Mayhew ran inside, and upon entering Cunningham's room, he saw Cunning-

---

[1] The crimes occurred on March 17, 2007, and the Gwinnett County grand jury returned a true bill of indictment against Lacey and his co-defendant, Stephanie Buskey, on June 13, 2007. The indictment charged Lacey with malice murder, felony murder (aggravated assault), felony murder (armed robbery), two counts of aggravated assault with a deadly weapon (upon Cunningham and Mayhew), armed robbery, and possession of a firearm during the commission of a felony. Lacey was tried before a jury beginning on March 3, 2008, and the jury returned a verdict of guilty on all counts on March 10, 2008. On April 3, 2008, the trial court imposed a life sentence on the malice murder conviction, a concurrent life sentence on the armed robbery conviction, a consecutive 20 year sentence on the conviction of aggravated assault on Mayhew, and a consecutive five year sentence on the firearm possession conviction. The felony murder convictions were vacated by operation of law, *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the conviction of aggravated assault on Cunningham merged with the malice murder conviction. See *Bell v. State*, 284 Ga. 790 (1) (671 SE2d 815) (2009). Lacey's motion for new trial, filed April 10, 2008 and amended November 4, 2009, was denied January 19, 2010. A notice of appeal was filed on February 16, 2010. The appeal was docketed to the April 2010 term in this Court and submitted for decision on the briefs.

ham holding Lacey's arms up in the air. Mayhew grabbed Lacey from behind and choked him as Cunningham began punching Lacey, but Mayhew released Lacey when he heard gunshots and saw Cunningham fall on the bed. As he fled the room, Lacey shot Mayhew. Cunningham later died as a result of a gunshot wound to his abdomen.

Buskey testified at trial[2] that on the day in question she was in Georgia visiting her boyfriend, Antonio Dyer. She stated that on that day, Dyer's friends, Daniel Chapman and Michael Torres, came over to Dyer's house, Chapman mentioned that Cunningham had just "re-upped" on marijuana, and she told Dyer that she wanted some. According to Buskey, Dyer said that he was going to get some marijuana by robbing Cunningham and although "he couldn't do it . . . he knew somebody that could." Buskey testified further that she met Lacey later in the day, and in Lacey's presence, Dyer said that Cunningham would be suspicious if he saw Dyer's car because Dyer had robbed Cunningham previously and it would look better if a female drove the car. Ultimately, Buskey drove Lacey to Cunningham's house. After entering the house, Lacey ran back to the car with some marijuana and reported that the men "rushed him," and he "hoped a bullet didn't hit [Mayhew]." Chapman testified that a dispute existed between Dyer and Cunningham because Dyer had stolen marijuana from Cunningham, who, in turn, "shorted" Dyer in a later drug transaction. He further stated that on the day of the crimes, Dyer told Buskey that he had been wanting to rob Cunningham.

Dyer testified that on the relevant date, Lacey was looking for marijuana; he told Lacey that Cunningham had some; and he, Torres, Buskey, and Sam Crossley met with Lacey before Lacey went to Cunningham's house. According to Dyer, Lacey later relayed that he had an argument with Cunningham, another man grabbed him, the gun fell, and he picked it up and fired three times. Torres testified that on the day in question, Lacey said that he was going to "hit a lick" and Lacey later explained that when he "went to rip [Cunningham] off," a struggle ensued, Mayhew grabbed him, and he fired a round after fighting free. Crossley testified that Lacey reported that once he grabbed the drugs, he got into a fight with Cunningham, his gun fell, and he picked it up and fired three times.

---

[2] Buskey was indicted on charges of felony murder (armed robbery) and armed robbery. During her testimony against Lacey at trial, she stated that she had entered into a plea agreement under which she was to plead guilty under *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970), to conspiracy to commit armed robbery and conspiracy to possess marijuana with intent to distribute, testify truthfully at Lacey's trial, and thereafter receive a sentence of fifteen years, eight to serve.

We conclude that the evidence adduced at trial was sufficient to enable a rational trier of fact to find Lacey guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Lacey contends that the trial court erred by denying his requests to charge on party to a crime and conspiracy that largely tracked the language of OCGA §§ 16-2-20 and 16-4-8, respectively. Lacey argues that a number of the State's witnesses were involved in the illegal procurement of marijuana and could have been charged with felonies and that the requested charges were necessary to provide a "legal context" for his arguments that such witnesses were biased and self-interested. These claims of error have been waived.

Following its charge to the jury, the trial court inquired whether there were any exceptions to it "other than those previously stated," and Lacey's counsel responded: "we just — we renew those." At the charge conference, however, Lacey's counsel did not object to the trial court's ruling that it would not give the requested charges. As such, Lacey's counsel's "renewal" of prior objections did not comply with OCGA § 17-8-58 (a), which requires a criminal defendant who objects to a portion of the jury charge to "inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." Accordingly, under OCGA § 17-8-58 (b), Lacey "waived his right to urge error [in the jury charge] on appeal," *Metz v. State*, 284 Ga. 614 (5) (669 SE2d 121) (2008), absent "plain error," which does not appear here.

3. Lacey contends that the prosecutor improperly commented on his exercise of his right to remain silent and presented improper victim impact argument and evidence. As Lacey's counsel did not object to the challenged remarks and evidence, these claims of error are waived. See *Sampson v. State*, 282 Ga. 82 (4) (646 SE2d 60) (2007); *Braithwaite v. State*, 275 Ga. 884 (10) (572 SE2d 612) (2002).

4. Finally, Lacey maintains that he received ineffective assistance of counsel at trial due to his trial counsel's failure to object to the prosecutor's improper comments on his exercise of his right to remain silent and the prosecutor's improper victim impact arguments and evidence. To succeed on this claim, Lacey must show that his counsel's performance was professionally deficient and that, but for such deficient performance, a reasonable probability exists that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Lacey failed to make the requisite showings.

(a) Lacey claims that the prosecutor improperly commented on his exercise of his right to remain silent by remarking on his failure

to testify at trial.[3] As a rule of constitutional and Georgia statutory law, a prosecutor may not comment upon a defendant's failure to testify at trial. *Smith v. State*, 279 Ga. 48 (2) (610 SE2d 26) (2005); OCGA § 24-9-20 (b). A criminal defendant alleging a violation of this rule establishes reversible error if "the prosecutor's manifest intention was to comment on the accused's failure to testify" or "the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (Punctuation and footnote omitted.) *Smith*, supra, 279 Ga. at 49 (2).

Lacey contends that the prosecutor improperly commented on his failure to testify by stating during closing argument that "[Lacey] cannot justify his excessive force when he never, ever, not to Buskey, not to the rest of the dazed and confused crowd, not to anybody else to this very day, he never said or implied that he was in fear for his life." The record shows that immediately before making these comments, the prosecutor told the jury: "you've gotten to know Cleondre Lacey from folks that knew him and saw his behavior that day," and from a brief videotape of a portion of Lacey's custodial interview with police two days after the crimes. The prosecutor further remarked: "you've gotten to know him well enough to know a couple of things about him that negate the reasonableness that he needs for self-defense." Following the challenged comments, the prosecutor highlighted Lacey's statements to the individuals he met up with after the shootings and their descriptions of Lacey's behavior and demeanor at the time and argued that Lacey was disrespectful to one of the investigators during the custodial interview.

Viewed in context, the prosecutor made the challenged comments while seeking to persuade the jury that Lacey's statements and behavior shortly after the crimes were inconsistent with Lacey's theory of self-defense, and we cannot conclude that his remarks were intended to comment on Lacey's failure to testify or would have been received as such by the jury. *Smith*, supra, 279 Ga. at 50 (2) (prosecutor's comment that defendant had shown no remorse, made in context of highlighting defendant's remarks and cavalier attitude towards crimes during his arrest, was not improper). As the challenged remarks were not improper, trial counsel's failure to object to them did not amount to deficient performance. See *Lampley v. State*, 284 Ga. 37 (2) (a) (663 SE2d 184) (2008).

(b) By statute, in both death penalty and non-death penalty

---

[3] Despite some ambiguity in his claim of error, Lacey relies on cases addressing comments on a defendant's failure to testify and does not argue that the prosecutor made an improper comment regarding pre-arrest silence.

cases, the State, in the discretion of the trial judge, is authorized to introduce evidence for the purpose of showing victim impact only in connection with sentencing. OCGA § 17-10-1.2. We have recognized, however, that in death penalty cases, the State is not precluded from introducing evidence at the guilt phase of trial for some other proper purpose by virtue of the fact that the evidence also incidentally conveys a crime's "victim impact consequences." *Sermons v. State,* 262 Ga. 286, 288 (1) (417 SE2d 144) (1992). For example, some facts about the victims inevitably will be developed in the guilt phase to provide the jury with the context in which the relevant events occurred. Id. Incidental characterizations of a victim relevant to the facts of the crime are not improper. *Butts v. State,* 273 Ga. 760 (15) (546 SE2d 472) (2001). Although this is not a death penalty case, these same principles apply and guide our analysis here.

Lacey contends that the prosecutor made an improper victim impact argument when, during his opening statement, he stated that he needed to tell the jurors some things about Cunningham that "I would imagine[ ] are not easy listening to members of his family who are hearing me talk at the moment." The record reflects that the prosecutor was referring to his subsequent statements that at the time of the crimes, Cunningham was "going down the wrong road," sold and used drugs, was not always ethical, was "fatally cocky or naive, or both, about the risks that came with his little hobby," and under different circumstances, might have ended up a criminal defendant. These (negative) characterizations of Cunningham were proper, as they were relevant to evidence later offered to explain the context in which these drug-related crimes occurred. Lacey also challenges the prosecutor's remark in his opening statement that "[Cunningham] should, wised up or not, still be walking around alive." This was not an improper "victim impact" argument. Rather, the prosecutor's allusion to the fact that Cunningham is no longer alive was relevant to the murder charge before the jury. See *Thornton v. State,* 264 Ga. 563 (4) (c) (449 SE2d 98) (1994) (prosecutor's statement in closing argument in guilt phase of trial in death penalty case that murder victim "will never leave here," and "will not leave there for her family" was permissible). Finally, Lacey argues that the prosecutor presented improper victim impact evidence by questioning Mayhew at trial about the consequences of his injuries and introducing into evidence pictures of Mayhew in the hospital following the shootings, but Mayhew's testimony and photographs of his injuries were directly relevant and admissible to prove the charge against Lacey of committing aggravated assault on Mayhew. See *Smith v. State,* 279 Ga. App. 211 (2) (630 SE2d 833) (2006); *Brown v. State,* 258 Ga. App. 78 (3) (573 SE2d 110) (2002). As the disputed remarks and evidence were not improper, trial counsel was not

deficient in failing to object to them.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 8, 2010 —
RECONSIDERATION DENIED DECEMBER 14, 2010.

*Edwin J. Wilson*, for appellant.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sheila E. Gallow, Assistant Attorney General,* for appellee.