A06A1399. BROWN v. THE STATE.
(635 SE2d 240)

RUFFIN, Chief Judge.

A jury found Jerry Brown guilty of two counts of aggravated child molestation, two counts of child molestation, false imprisonment, and enticing a child for indecent purposes. In seven enumerations of error, Brown challenges his conviction on appeal. Specifically, Brown argues that the trial court violated several of his constitutional rights and erred in admitting certain evidence. Brown also alleges that he received ineffective assistance of trial counsel. For reasons discussed below, we disagree and affirm.

Viewed favorably to the verdict,[1] the evidence shows that in July 2000, when K. J. was 12 years old, she informed her mother that she had been molested by her stepfather, her stepuncle, and her stepgrandfather, Jerry Brown. The three men were indicted jointly, and Brown moved for severance. The State agreed to sever the trial, and Brown was tried in October 2001.

---

[1] See *Phillips v. State*, 278 Ga. App. 198 (1) (628 SE2d 631) (2006).

Only four witnesses testified on behalf of the State: K. J.; K. J.'s mother; a police investigator; and an emergency room nurse. K. J. testified that she had known Brown since she was eight years old, when she lived in Boston, Massachusetts. According to K. J., while in Boston, Brown had exposed his penis to her and touched her in a way that made her uncomfortable. K. J. moved to Georgia in 1999, and Brown apparently moved as well. On one occasion, Brown took K. J. to his house, purportedly to have her help him clean his garage. Once K. J. was at the house, she was unable to leave because the front door was locked. K. J. testified that Brown tugged her toward him, "pulled [her] pants down," and "had sex with [her]." He subsequently performed oral sodomy on the victim and forced her to perform oral sex on him. The victim claimed that the incident at Brown's house was not her first sexual encounter with Brown and that on multiple occasions he either had sexual intercourse with her and/or sodomized her.

Patricia Cobb, the victim's mother, testified that in July 2000, when leaving church, the victim admitted that her stepgrandfather "had sex with her." Cobb immediately called 911 from her cell phone and was told to take her daughter to the hospital. Delane Pittman, a nurse at the hospital who examined the victim, testified that the victim reported having been sexually assaulted by her stepgrandfather. Pittman testified that K. J. seemed nervous, laughed inappropriately, was evasive, and became "tearful at times."

Investigator Michael Freeman, who interviewed the victim, also testified. K. J. told Freeman that "she had been . . . molested for the last few years by her stepgrandfather." Freeman scheduled an appointment for the victim at the Child Advocacy Center where she was interviewed by a "forensic interviewer." Freeman observed the interview from behind a two-way mirror. According to Freeman, K. J.'s statement during the interview "was consistent with the statement [she had] given at the hospital, which was the fact that she had . . . over the past several years been . . . molested by Jerry Brown."

1. In two enumerations of error, Brown contends that the trial court impermissibly employed the Rape Shield statute to limit his ability to cross-examine the victim. Specifically, Brown argues that he should have been able to question witnesses about the victim's alleged molestation by her stepfather and stepuncle, which he contends "was necessary . . . for identification, to clarify testimony, show bias, motive and to show inconsistencies in the witnesses' trial testimony."

We have held that "[a]bsent a showing of relevancy, evidence of a child's past sexual history, including sexual activity involving a

person other than the defendant being tried, is inadmissible."[2] This is true even if the other sexual encounter also involved allegations of molestation.[3] There are exceptions to this exclusionary rule for cases in which the State introduces medical evidence, which shows the child has been sexually abused, or cases in which "the child exhibits symptoms of the abuse accommodation syndrome."[4] Here, however, neither exception applies.

Although the State could have tendered evidence from the doctor who examined K. J. to demonstrate that there was physical evidence of intercourse, it did not do so.[5] And Brown has not pointed to any proffer of evidence that the victim suffered from abuse accommodation syndrome. Rather, Brown merely cites to Pittman's testimony that the victim's "behavioral characteristics were consistent with those of a child who had been sexually molested." This testimony, however, falls far short of the expert testimony regarding abuse accommodation syndrome that we have held warrants admitting evidence of previous molestation by others.[6] Under these circumstances, this argument presents no basis for reversal.[7]

Brown also contends that evidence of previous molestation by others was needed to explain Pittman's testimony. According to Brown, there were inconsistencies between Pittman's trial testimony and the medical report that she made at the hospital, which made it unclear whether the "Jerry" who allegedly molested K. J. was Brown or her stepfather. In the report, which was not tendered in evidence, the victim told Pittman that her "stepfather, stepuncle, [and] stepgrandfather have been making [her] have S-E-X . . . since 2nd grade." The victim then described a specific incidence of molestation involving her stepfather, who also was named "Jerry." According to Brown, he should have been able to cross-examine Pittman regarding the victim's allegations that another Jerry had molested her. We disagree.

"Control of the nature and scope of cross-examination of a witness is a matter within the sound discretion of the trial court and

---

[2] *Rocha v. State*, 248 Ga. App. 53, 56 (2) (545 SE2d 173) (2001).

[3] See id.

[4] Id.

[5] In fact, the State did not call the doctor as a witness. The defense subpoenaed the doctor, but the trial court ruled that no evidence had been presented "that would allow [Brown] to inquire about any prior molestations."

[6] See *Hall v. State*, 196 Ga. App. 523, 524-525 (2) (396 SE2d 271) (1990) (evidence of prior molestation by others admissible where State presents expert testimony that child suffered from sexual abuse accommodation syndrome).

[7] See *Duncan v. State*, 232 Ga. App. 157, 162-163 (5) (500 SE2d 603) (1998) (evidence of prior molestation by others inadmissible where State presents no medical evidence of molestation and does not assert that child suffered from syndrome).

will not be disturbed on appeal absent an abuse of that discretion."[8] Although K. J. apparently did not elaborate on Brown's molestation during Pittman's interview, she testified unequivocally that it was Brown who molested her on the date at issue. And K. J. also told Pittman that she had been molested not only by her stepfather, but also by Brown. Under these circumstances, the trial court did not abuse its discretion in prohibiting Brown from cross-examining Pittman regarding K. J.'s abuse at the hands of her stepfather.[9]

Similarly, Brown asserts that he should have been able to fully cross-examine the victim about inconsistencies between her trial testimony and the report she gave police, which required him to delve into her alleged molestation by others. Again, however, evidence regarding a child's past sexual history — including acts of molestation by others — is generally inadmissible.[10] Accordingly, the trial court did not abuse its discretion in limiting Brown's cross-examination of the victim in this regard.[11]

Finally, Brown contends that the trial court improperly limited his cross-examination of the victim's mother regarding her marriage to Brown's son. Brown attempted to ask Cobb whether she was "debat[ing]" with her husband "over someone giving the other person venereal disease." The trial court sustained a relevancy objection to this question. " 'The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion.' "[12] Here, we fail to see how the court abused its discretion in disallowing such question as it involved Cobb's relationship with her husband rather than the defendant.

2. Opening statements were not transcribed. However, the State allegedly made reference to what Brown characterizes as "similar transaction" evidence during its opening statement. On appeal, Brown argues that the trial court erred in permitting the State to introduce this evidence and that the trial court should have granted a mistrial or, at the very least, issued limiting instructions.

As a threshold matter, we question whether Brown's failure to have opening statements transcribed precludes us from addressing this allegation of error.[13] And Brown does not provide a single record

---

[8] (Punctuation omitted.) *Edwards v. State*, 253 Ga. App. 479, 482 (2) (559 SE2d 506) (2002).

[9] See id.

[10] See *Rocha*, supra.

[11] See *Edwards*, supra.

[12] *Schneider v. State*, 267 Ga. App. 508, 510 (2) (603 SE2d 663) (2004).

[13] See *Kegler v. State*, 267 Ga. 147, 148 (3) (475 SE2d 593) (1996) ("The burden is on the complaining party[ ] . . . to compile a complete record of what happened at the trial level, and when this is not done, there is nothing for the appellate court to review.") (punctuation omitted).

citation demonstrating that such evidence was, in fact, tendered. Assuming the error was preserved, we still find no basis for reversal. Although Brown moved for a mistrial, it was after he — not the State — elicited testimony regarding abuse in Massachusetts on cross-examination. And " '[s]elf-induced error cannot be complained of on appeal.' "[14]

3. Brown asserts that the trial court erred by admitting into evidence certain hearsay statements, which he contends do not fall within the Child Hearsay Statute. However, Brown did not object to the admission of this testimony below and thus cannot complain of its admission on appeal.[15]

Even if Brown had objected, this argument lacks merit. According to Brown, the trial court erred in admitting Freeman's testimony regarding K. J.'s statements to the forensic interviewer. He argues that since the statements were not made directly to Freeman, the testimony does not fall within the ambit of OCGA § 24-3-16, which provides that

[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony *of the person or persons to whom made* if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[16]

Here, however, the record shows that Freeman was present behind a two-way mirror when K. J. made the statements to the forensic interviewer, and that K. J. knew he was listening. Brown cites no authority for his novel proposition that, because Freeman was not asking the questions, the victim's responses are inadmissible.[17]

In the same enumeration of error, Brown claims that the trial court erred in admitting the mother's testimony that, on the day the victim made her outcry, she was leaving a vacation bible school class

---

[14] *Phyfer v. State*, 259 Ga. App. 356, 361 (5) (b) (577 SE2d 56) (2003).

[15] See *Brock v. State*, 270 Ga. App. 250, 253 (4) (605 SE2d 907) (2004) (" 'It is too late to urge objections to the admission of evidence after it has been admitted without objection; failure to object to evidence when it is offered amounts to a waiver of any objection that might have been raised.' ").

[16] (Emphasis supplied.)

[17] The two cases Brown cites, *Cobb v. State*, 209 Ga. App. 708 (434 SE2d 513) (1993) and *Rayburn v. State*, 194 Ga. App. 676 (391 SE2d 780) (1990), are inapposite.

and said that she felt she could kill herself. Again, however, Brown failed to object to this testimony and thus is precluded from raising this argument on appeal.[18]

4. In two related enumerations of error, Brown argues that the hearsay statements served to bolster the victim's credibility and lacked sufficient indicia of reliability. As Brown did not object to the testimony on either of these bases, however, he has waived these arguments on appeal.[19] To the extent that Brown now contends the admission of this evidence was "plain error," we note that "our Supreme Court has limited application of the 'plain error' doctrine to capital cases and to criminal cases in which the trial judge allegedly intimates an opinion of the defendant's guilt, in violation of OCGA § 17-8-57."[20] Accordingly, this doctrine has no application here.

5. In his final enumeration of error, Brown contends that he received ineffective assistance of counsel. In addition to broad assertions that trial counsel "was not adequately prepared," "provide[d] weak advocacy," and engaged in "superficial" cross-examination, Brown also points to his attorney's failure to object to certain testimony. However, during the hearing on Brown's motion for new trial, Brown asked his trial counsel no questions about any of these alleged deficiencies. Rather, Brown simply asked the attorney to give "an outline of how [he] approached the case and what [his] theory of the defense was." Brown's attorney then testified that he met with his client "eight or nine" times, engaged in quite a bit of discovery, and determined that the best strategy was to seek severance. Apparently, in addition to K. J., there were other victims in addition to the other alleged molesters, and counsel thought it best for Brown to proceed to trial separately.

In order to establish a claim of ineffective assistance, Brown must demonstrate both that his counsel's performance was deficient and that, but for the deficiency, the outcome at trial would have been different.[21] Moreover, "[t]here is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. In the absence of testimony to the contrary, counsel's actions are presumed strategic."[22] And declining to object to testimony can be considered reasonable trial strategy.[23]

---

[18] See *Brock*, supra.

[19] See id.

[20] (Footnote omitted.) *Cochran v. State*, 277 Ga. App. 251, 255 (2) (626 SE2d 217) (2006).

[21] See *Duvall v. State*, 273 Ga. App. 143, 144 (3) (614 SE2d 234) (2005).

[22] (Punctuation omitted.) Id. at 147 (3) (g).

[23] See *Davenport v. State*, 278 Ga. App. 16, 25 (2) (e) (628 SE2d 120) (2006) (" '[D]ecisions as to whether to interpose certain objections fall within the realm of trial tactics and strategy

Given Brown's inability to demonstrate that trial counsel's failure to object was anything other than trial tactics, he has not established an ineffective assistance claim.[24]

Brown also asserts that trial counsel was not sufficiently knowledgeable regarding the rape shield law to be effective. Brown premises this assertion, in large part, on his attorney's inability to cross-examine K. J. regarding her allegations of molestation by others. However, trial counsel's inability to cross-examine the victim in this regard stemmed not from his lack of knowledge, but from his tactical decision to have Brown's trial severed from that of his co-defendants. Although this decision may have hampered counsel somewhat in casting aspersions on other potential perpetrators, it also precluded the State from introducing favorable testimony, such as medical evidence confirming that the victim had been sexually penetrated. In short, trial counsel made a strategic decision, and we will not judge it using hindsight.[25]

Finally, Brown contends that trial counsel was not knowledgeable about the Child Hearsay Statute. Specifically, he claims that his attorney failed to highlight the unreliability of K. J.'s statement to Pittman. However, it is mere speculation that a more thorough cross-examination on this issue would have altered the outcome at trial, and such speculation is insufficient to sustain an ineffectiveness claim.[26]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED AUGUST 2, 2006.

*Axam & Adams, Tony L. Axam, for appellant.*
*Daniel J. Craig, District Attorney, Madonna M. Little, Rebecca A. Wright, Charles R. Sheppard, Assistant District Attorneys, for appellee.*

---

and usually provide no basis for reversal of a conviction.' ").

[24] See *Tarver v. State*, 280 Ga. App. 89, 92 (3) (633 SE2d 415) (2006) (counsel's actions "are thus presumed strategic, rather than deficient, in the absence of testimony to the contrary").

[25] See *Shields v. State*, 264 Ga. App. 232, 238 (4) (590 SE2d 217) (2003).

[26] See *Randall v. State*, 207 Ga. App. 637, 640 (3) (428 SE2d 616) (1993).