A08A0682. BIRKBECK v. THE STATE.
(665 SE2d 354)

JOHNSON, Presiding Judge.

A jury found Benjamin Birkbeck guilty of the sexual battery and child molestation of his stepdaughter, H. L. He appeals, challenging the sufficiency of the evidence and contending that he received ineffective assistance of counsel. He also claims that the trial court erred by admitting certain evidence against him and by commenting

---

improperly on the evidence. We find no reversible error and affirm.

On appeal from his criminal convictions, Birkbeck no longer enjoys a presumption of innocence, and we construe the evidence in a light favorable to the jury's verdict.[1] We neither weigh the evidence nor assess the credibility of the witnesses, but merely determine whether the evidence was sufficient to enable a rational trier of fact to find all the essential elements of the crimes charged beyond a reasonable doubt.[2]

Viewed in this manner, the evidence shows that Birkbeck married H. L.'s mother in 1992, when H. L. was six years old. H. L. testified that one day when she was eight, Birkbeck entered her room while she was playing with Barbie dolls. He asked her to pretend to be a Barbie doll and to undress and lie on her bed. After she complied, Birkbeck inserted a Barbie doll in her anus, then told her not to tell anyone. According to H. L., Birkbeck played this "Barbie game" on two more occasions. Birkbeck tried to initiate the game a fourth time, but H. L. told him that she did not want to play because it hurt. Instead, Birkbeck took off her pants and inserted his fingers into her vagina. Afterward, he threatened her not to tell anyone.

H. L. testified that on another occasion, she was outside playing when Birkbeck called her into the house and showed her a pornographic magazine. He then exposed his penis and began masturbating. Birkbeck asked H. L. to "do it for him," and when she refused, he grabbed her hand and placed it on his penis. He then forced his penis into her mouth, but the incident ended when H. L. bit him. Another time, according to H. L., Birkbeck kissed her body and inserted his tongue into her vagina.

H. L. described another incident in which Birkbeck put makeup and perfume on her, then bent her over and inserted his penis into her anus. H. L. asked him to stop because it was very painful. Birkbeck then inserted something — either his fingers or a dildo — into H. L.'s vagina. When H. L. began crying, Birkbeck called her a crybaby and shoved her against a dresser.

Finally, H. L. testified that one day when she was alone in the car with Birkbeck, he pulled down a dirt road and inserted his finger into her vagina. H. L. testified Birkbeck kissed her and put his finger in her vagina other times as well, but she could not remember how many.

When H. L. was 11 or 12, Birkbeck began training to become a police officer. She told Birkbeck to stop touching her "because if he

---

[1] See *Berman v. State*, 279 Ga. App. 867, 867-868 (1) (632 SE2d 757) (2006).

[2] Id. at 868.

didn't, [she] was going to tell his boss, and he was going to be in big trouble." The abuse stopped.

H. L. testified that she did not tell anyone about Birkbeck's abuse because she did not think anyone would believe her. She related an incident in which she and her mother were watching a television show that depicted an incestuous father-daughter relationship. H. L. asked her mother what she would do if she knew that Birkbeck was "doing that" to H. L., but her mother replied, "[H]e would never do that to you, you don't have anything to worry about." H. L. broached the subject on a second occasion, but her mother again "brushed it off as if it was nothing." When H. L. was asked why she had not told anyone else about Birkbeck's abuse, she replied, "I was scared. . . . [M]ore than everything else he was supposed to be a cop, and he was supposed to be getting people like himself."

H. L. continued living at home with her family until February 2006, at which point she was a college student. She testified that during the early morning of February 28, she was sleeping in her room when she was awakened by Birkbeck's hand on her stomach. He slipped his hands into her pants and began to insert his finger into her vagina, then realized that she was menstruating. When H. L. asked him what he was doing, he told her that her mother had refused to have sex with him. He then left the room.

Later that day, at her after-school job at a fast food restaurant, H. L. began crying in the bathroom. A co-worker came in and asked what was wrong, and H. L. said that her stepfather had treated her "wrongly." At the co-worker's urging, H. L. also told the manager of the restaurant that her stepfather had "done something very wrong" to her. H. L. spent that evening and the next with the manager's family, then stayed alternately with her grandmother and another woman. H. L. never spent another night at her childhood home, even though she had left all her clothes and belongings there.

H. L. gradually began telling more people what Birkbeck had done. In May 2006, she went to the police. Investigator John Kennedy of the Coweta County Sheriff's Office interviewed H. L. and began investigating the case. Birkbeck was eventually arrested and charged with attempted rape, aggravated sexual battery, two counts of aggravated child molestation, and three counts of child molestation.

The case first went to trial in February 2007. The jury found Birkbeck not guilty of attempted rape, but it could not reach a verdict on the remaining counts. Accordingly, the court declared a mistrial as to those counts.

Before his second trial, Birkbeck agreed to take a polygraph examination administered by certified polygraph examiner Steve

Duncan of the Georgia State Patrol. The parties stipulated that the results of the examination would be admissible at trial. At the second trial, Duncan testified that during the examination Birkbeck had shown substantial deception when asked whether he had touched H. L. in a sexual manner.

The state presented evidence that a search of Birkbeck's residence had yielded, in his bedroom, stories printed from the internet that described family members having sex. A search of Birkbeck's computer showed numerous links to incest-themed websites.

The state also presented the testimony of Crystal Voght, who began a sexual relationship with Birkbeck when she was a 17-year-old high school student. Voght's former co-worker testified that Voght had told her that she shaved her pubic area at Birkbeck's request.

Finally, the state presented the expert testimony of Dr. Julie Medlin, a psychologist who specializes in evaluating and treating sexual abuse victims and perpetrators. Medlin testified that she tested and interviewed H. L. and that H. L.'s "test results strongly suggest that she is showing signs and symptoms that are commonly associated with sexual abuse."

After the state rested its case, the defense presented two expert witnesses, a psychologist and a psychiatrist, who testified that in their opinion — based largely on their review of Medlin's records — H. L.'s allegations against Birkbeck were inconsistent with typical child sexual abuse patterns. Neither expert had met H. L.

Birkbeck testified in his own defense and denied ever touching H. L. in a sexual manner. H. L.'s mother testified that she did not believe her daughter's allegations. Finally, the defense called numerous witnesses, many of whom attended church with the Birkbeck family, who testified that Birkbeck's reputation in the community was good and H. L.'s reputation was bad. Most of these witnesses also stated that they would continue to believe Birkbeck was a man of good character no matter what they heard about him.

The jury found Birkbeck guilty of five counts of child molestation and one count of sexual battery.

1. Birkbeck argues that the evidence was insufficient to support the verdict because "[n]o physical or medical evidence was presented by the State to corroborate the allegations made by H. L. and the entire case rested on her credibility." "There is no requirement that the testimony of the victim of child molestation be corroborated."[3] In this case, however, the convictions were supported by additional evidence, including the results of Birkbeck's stipulated polygraph

---

[3] *Cortez v. State*, 286 Ga. App. 170, 172 (1) (a) (648 SE2d 488) (2007).

examination, the incest-related material found in his bedroom and computer, his previous sexual relationship with a high school girl, and the testimony of H. L.'s co-workers and examining psychologist.[4] Any conflicts or inconsistencies in the testimony were for the jury to resolve.[5] The evidence in this case was more than sufficient under the standard set forth in *Jackson v. Virginia*.[6]

2. At trial, the prosecutor asked psychologist Medlin for her "diagnostic impression" of H. L., based on her interviews and testing. Medlin responded, "I diagnosed her with *sexual abuse as a child, as the victim alleged*, post-traumatic stress disorder, chronic, and major depressive disorder."[7] Birkbeck contends that Medlin's response was an impermissible opinion on the ultimate issue in the case, that the trial court committed plain error by allowing it, and that his lawyer was ineffective for failing to object to it.

(a) Because Birkbeck did not object at trial to the testimony in question, he has waived his right to challenge it on appeal.[8] Although he asks us to review the admission of the testimony for plain error, our Supreme Court has held that "application of the plain error rule is limited to death penalty cases and criminal cases in which the trial judge, in violation of OCGA § 17-8-57, has expressed or intimated the judge's opinion as to the guilt of the accused or as to what has or has not been proved."[9] This case fits neither situation; thus, the plain error rule is not applicable.[10]

(b) To prevail on a claim of ineffective assistance of counsel, Birkbeck must show that his counsel's performance was deficient and that the deficiency so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[11] Birkbeck must overcome the strong presumption that counsel's performance fell within the broad range of reasonable professional conduct.[12] "We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result."[13]

---

[4] See *Fiek v. State*, 266 Ga. App. 523, 527 (4) (597 SE2d 585) (2004).

[5] See id.

[6] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[7] (Emphasis supplied.)

[8] See *Brown v. State*, 280 Ga. App. 884, 889 (4) (635 SE2d 240) (2006).

[9] *Brooks v. State*, 281 Ga. 514, 516 (2) (640 SE2d 280) (2007).

[10] See *Brown*, supra.

[11] See *Rouse v. State*, 290 Ga. App. 740, 741 (1) (660 SE2d 476) (2008).

[12] See *Buice v. State*, 239 Ga. App. 52, 60 (6) (520 SE2d 258) (1999).

[13] (Citation and punctuation omitted.) Id.

It is well settled that a witness, even an expert witness, in a child molestation case may not express her opinion on the ultimate issue in the case — i.e., whether the child was molested.[14] Accordingly, we assume for the purpose of this appeal that defense counsel's failure to object to Medlin's testimony that she diagnosed H. L. with "sexual abuse as a child, as the victim alleged" constituted deficient performance.[15]

Birkbeck has not shown, however, that counsel's error prejudiced him. The challenged testimony represented a mere nine words in the course of Medlin's lengthy testimony, which also included her repeated, entirely proper statements that H. L.'s behavior was *consistent with* a history of sexual abuse.[16] The defense presented not one, but two, expert witnesses to rebut Medlin's conclusions. Moreover, the jurors had ample opportunity to evaluate H. L.'s credibility themselves; H. L. testified at trial and was thoroughly cross-examined, and a videotape of her police interview was played for the jury. Finally, although H. L.'s credibility obviously was important, her testimony was not the only evidence of Birkbeck's guilt. There was also, for example, the failed polygraph examination. Under these circumstances, it is improbable that an objection to the challenged testimony would have led to a different trial outcome.[17]

3. Birkbeck also complains that Investigator Kennedy improperly bolstered H. L.'s credibility. He points to Kennedy's response to the prosecutor's question, "Have you ever unfounded any cases?" Kennedy responded that he had, then explained that "[u]nfound means when you actually work a case and the case is unfounded, meaning a crime has not occurred." Birkbeck also points to Kennedy's testimony that during his interview of H. L., he and the

---

[14] *Odom v. State*, 243 Ga. App. 227, 227-228 (1) (531 SE2d 207) (2000); *Putnam v. State*, 231 Ga. App. 190, 191 (2) (498 SE2d 340) (1998).

[15] As the trial court suggested at the hearing on Birkbeck's motion for new trial, defense counsel might legitimately have decided that objecting to Medlin's testimony "would just bring more attention to it and cause more of a problem for your client than if you sat there and just let it go." See *Al-Attawy v. State*, 289 Ga. App. 570, 573 (1) (657 SE2d 552) (2008) (counsel's decision to challenge bolstering testimony on cross-examination, rather than by objecting to it, was reasonable trial strategy). Defense counsel, however, denied that his failure to object was a matter of trial strategy; rather, counsel simply did not "see [the testimony] as commenting on the ultimate issue of fact." Although there is a strong presumption that counsel's challenged actions were reasonable trial strategy, see, e.g., *Moss v. State*, 278 Ga. App. 362, 364 (2) (629 SE2d 5) (2006), that presumption must fall in the face of counsel's plain denial.

[16] See *Odom*, supra at 227 (finding "absolutely nothing wrong with expert opinion testimony that . . . 'the victim's psychological evaluation was *consistent with* sexual abuse' ") (emphasis supplied).

[17] See *Al-Attawy*, supra at 573-574; *Frazier v. State*, 278 Ga. App. 685, 691 (3) (a) (629 SE2d 568) (2006), overruled in part on other grounds, *Schofield v. Holsey*, 281 Ga. 809, 812, n. 1 (642 SE2d 56) (2007); *Horne v. State*, 262 Ga. App. 604, 606 (1) (586 SE2d 13) (2003) (physical precedent only).

other officers "looked at behavioral patterns, we looked at, you know, how she speaks, what she's saying, and what is appropriate to what she is describing to us." Finally, Birkbeck cites Kennedy's response to the prosecutor's question as to whether Kennedy was satisfied with his investigation. Kennedy stated, "Yes, I am. I think I have done everything I can do."

(a) According to Birkbeck, the outcomes of Kennedy's previous cases, his observations of H. L.'s behavior, and his level of satisfaction with the investigation all were irrelevant and prejudicial. As Birkbeck failed to object to this testimony at trial, he has waived his challenge to it.[18] And although Birkbeck asks us to review the admission of the testimony for plain error, the plain error rule does not apply here.[19]

(b) Birkbeck also contends that his lawyer provided ineffective assistance by failing to object to Kennedy's testimony. We disagree. Kennedy neither commented on H. L.'s veracity nor stated that she had been molested. Although the jury could infer from Kennedy's testimony that he believed the charges against Birkbeck were founded, such an inference is unavoidable in any criminal case. The fact that the state charged Birkbeck with the crimes means that the state believes he committed them. We find no improper bolstering in Kennedy's testimony.[20] Therefore, counsel's failure to object did not constitute deficient performance.

4. On cross-examination, defense counsel asked Medlin, "How can you explain [H. L.'s] lack of reporting [the alleged abuse] during a long period of time over a couple of years . . . until she was an adult?" Medlin gave a lengthy response, the gist of which was that H. L., like many sexual abuse victims, did not report Birkbeck's crimes right away out of fear that her mother would not believe her. As part of the response, Medlin stated:

> It's very, very difficult for children who have been sexually abused to disclose if the mother is not going to be supportive of the child. And unfortunately that is very common that the mother does not want to believe that her husband has molested a child because then that means she has to give up her marriage, and that, you know, pulls her life apart. It really puts the mother in a very difficult position.

---

[18] See *Minor v. State*, 264 Ga. 195, 196 (1) (442 SE2d 754) (1994).

[19] See Division 2 (a), supra.

[20] See *Odom*, supra.

Defense counsel moved for a mistrial, citing *Lott v. State*,[21] but the trial court denied the motion. Birkbeck claims that the court erred.

Defense counsel, however, elicited the complained of testimony by asking Medlin an open-ended question that invited the detailed, responsive answer that she gave. Birkbeck cannot complain of this induced error.[22]

5. Birkbeck makes several claims of error concerning evidence of H. L.'s other allegations of abuse.

(a) At Birkbeck's first trial, the defense sought to introduce evidence of a false allegation by H. L. that she was the victim of date rape in 2006. The defense hoped the evidence would help portray H. L. as a liar. At a pretrial evidentiary hearing, however, the trial court found a reasonable probability that the date rape allegation was true and therefore ruled that it was inadmissible under Georgia's rape shield law.[23]

Birkbeck now claims that the evidence should have come in under an exception to the rape shield law allowing evidence of previous sexual abuse when the state presents evidence that the child shows psychological symptoms consistent with sexual abuse.[24] "The purpose of this exception is to permit evidence that the victim's . . . behavioral symptoms were caused by someone else other than the defendant."[25] Birkbeck argues that he should have been permitted to show that H. L.'s psychological problems, which Medlin testified stemmed from sexual abuse, were caused by the date rape, not by Birkbeck. But Birkbeck did not seek to introduce evidence of the date rape for this reason; rather, he argued to the trial court that H. L. had made a previous false allegation. Thus, Birkbeck has waived this argument on appeal.[26]

(b) Birkbeck claims that his trial counsel was ineffective for failing to introduce evidence of the date rape and of H. L.'s prior truthful allegation of molestation against a youth minister. But as noted, trial counsel's strategy was to paint H. L. as a liar whose allegations against her stepfather could not be believed. To that end, counsel put on a number of lay witnesses who testified that H. L. had a bad reputation and was not credible, as well as two expert witnesses who challenged Medlin's methodology and disagreed with

---

[21] 206 Ga. App. 886 (426 SE2d 667) (1992) (finding reversible error where investigating officer in child molestation case testified on direct examination that, in his experience, victims' mothers usually side with the defendants).

[22] See *Ochoa v. State*, 252 Ga. App. 209, 211 (4) (555 SE2d 857) (2001).

[23] See OCGA § 24-2-3. The rape shield law excludes evidence relating to the past sexual behavior of the alleged victim. *Rocha v. State*, 248 Ga. App. 53, 56 (2) (545 SE2d 173) (2001).

[24] See *Rocha*, supra.

[25] Id.

[26] See *Caldwell v. State*, 247 Ga. App. 191, 198 (3) (542 SE2d 564) (2000).

her conclusions that H. L. suffered from psychological conditions associated with sexual abuse. Counsel's strategy of attacking H. L.'s veracity was not consistent with the introduction of evidence that H. L. had made two previous *truthful* allegations of abuse that were the real cause of her behavioral symptoms.

Birkbeck points out that his lawyer testified at the hearing on the motion for new trial that he was not aware, during trial, that evidence of H. L.'s other allegations of abuse might have been admissible to show that Birkbeck was not the source of her mental trauma. Thus, contrary to the state's argument, defense counsel's failure to seek to introduce the evidence for that purpose was not a strategic decision. It would be pure speculation at this point, however, to assume that if counsel had known the relevant law at the time, he would have abandoned his strategy of calling H. L. a liar in favor of a different strategy of conceding the existence of her trauma, but arguing that it originated from sources other than Birkbeck. And even assuming counsel would have chosen the latter strategy, Birkbeck has not shown a reasonable probability that strategy would have been more effective, or would have produced a different outcome at trial.[27] In the absence of a showing of prejudice, this claim of ineffective assistance fails.

(c) Finally, Birkbeck asserts that trial counsel was ineffective for failing to introduce evidence related to the attempted rape charge of which he was acquitted in the first trial. That charge was based on H. L.'s testimony in the first trial that on March 30, 2006, after she had moved out of her family home, she unexpectedly encountered Birkbeck in her bedroom at her grandmother's house. According to H. L., Birkbeck attacked her and said, "now we can be consensual," but she managed to escape.

Birkbeck contends that evidence of the alleged events of March 30, for which he had alibi witnesses, would have undermined H. L.'s credibility. Evidence of the victim's prior false accusations of sexual misconduct is admissible to attack her credibility and to prove that the charged offense did not occur.[28] Before such evidence may be admitted, however, the defendant must prove to the trial court's satisfaction, outside the presence of the jury, that "a reasonable

---

[27] See *Abernathy v. State*, 278 Ga. App. 574, 587 (3) (b) (v) (630 SE2d 421) (2006) ("Trial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them.") (citation and punctuation omitted).

[28] *Roberts v. State*, 286 Ga. App. 346, 347 (648 SE2d 783) (2007).

probability of falsity exists."[29] We review a trial court's decision not to allow such evidence for abuse of discretion.[30]

Although the jury found Birkbeck not guilty beyond a reasonable doubt of the attempted rape charge at his first trial, that is a different standard from the one the trial court uses to determine the admissibility of evidence of prior false allegations. In light of H. L.'s detailed testimony at the first trial concerning the March 30 incident, Birkbeck has not made the requisite "strong showing" that he would have prevailed had trial counsel sought to admit the evidence in question.[31] Moreover, he has not shown that had the evidence come in, there is a reasonable probability that the outcome of the trial would have been different.

6. Birkbeck contends that his trial counsel was ineffective for not moving to suppress the results of the state's search of his residence. According to Birkbeck, the warrant used for the search was a general warrant based on stale information. At the hearing on Birkbeck's motion for new trial, counsel testified that he considered moving to suppress, but saw nothing improper about the warrant.

The mere failure to file a suppression motion does not constitute ineffective assistance of counsel.[32] To prevail on this claim, Birkbeck must "make a strong showing" that if his lawyer had filed a motion to suppress, the trial court would have granted it.[33] Birkbeck cannot make that showing.

"A search warrant that fails to state with sufficient specificity what items can be seized is a general warrant and violates the state and federal constitutions."[34] The warrant in this case sought, among other things, "computer, computer parts and hard drives containing media and images of sexually explicit material or text discussing sexually explicit material . . . , [or] stored files which may be found on a computer. . . ." This description was sufficient.[35]

With respect to Birkbeck's argument that the warrant was stale,

the proper procedure is to view the totality of the circumstances for indications of the existence of reasonable probability that the conditions referred to in the sworn testimony would continue to exist at the time of the issuance of

---

[29] (Citation omitted.) Id.
[30] Id.
[31] See *Lane v. State*, 250 Ga. App. 160, 161 (1) (549 SE2d 468) (2001).
[32] *Mayes v. State*, 229 Ga. App. 372, 373 (1) (494 SE2d 34) (1997).
[33] See id.
[34] (Citation omitted.) *Daniels v. State*, 278 Ga. App. 332, 336 (1) (b) (629 SE2d 36) (2006).
[35] See id.; *Smith v. State*, 274 Ga. App. 106, 110 (3) (616 SE2d 868) (2005).

the search warrant. The mere passage of time does not equate with staleness.[36]

Although Birkbeck argues that the search occurred long after the alleged molestation, the items sought here were not perishable, consumable, or disposable, and therefore were unlikely to be affected by the passage of time.[37] The warrant was not based on stale information.

7. Birkbeck claims that the trial court erred by denying his motion in limine to exclude the pornographic material found in his bedroom and on his computer because there was insufficient evidence that the material belonged to him and that it was linked to the charged crimes. We disagree.

In a sex crimes case, evidence of sexual paraphernalia found in the defendant's possession is admissible if it shows "defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity."[38] We review for abuse of discretion a trial court's decision to admit such evidence.[39]

Because the material in question was found in Birkbeck's bedroom and on his computer, there is a rebuttable presumption that he possessed it.[40] Although Birkbeck presented evidence that the material was not his, that was a question for the jury.[41] And despite Birkbeck's argument to the contrary, the state established a sufficient nexus between the material and the crimes charged. The material was incest-themed pornography; Birkbeck was charged with molesting his stepdaughter. The trial court did not abuse its discretion in admitting the evidence.[42]

8. Birkbeck complains that the trial court violated OCGA § 17-8-57[43] by improperly commenting on the evidence in the case. Although counsel did not object to any of the comments in question, we review alleged violations of OCGA § 17-8-57 under the plain error

---

[36] (Citations and punctuation omitted.) *State v. Graddy*, 262 Ga. App. 98, 103 (3) (585 SE2d 147) (2003).

[37] See id.; *State v. Lejeune*, 277 Ga. 749, 753 (2) (594 SE2d 637) (2004); *Bayles v. State*, 188 Ga. App. 437 (373 SE2d 266) (1988).

[38] *Simpson v. State*, 271 Ga. 772, 774 (1) (523 SE2d 320) (1999).

[39] See *Ferrill v. State*, 278 Ga. App. 132, 134 (3) (628 SE2d 217) (2006).

[40] See *Jackson v. State*, 271 Ga. App. 278, 283 (3) (609 SE2d 207) (2005).

[41] See *Jones v. State*, 198 Ga. App. 303, 305 (1) (401 SE2d 322) (1991).

[42] See, e.g., *Smith v. State*, 285 Ga. App. 658, 661 (2) (a) (647 SE2d 346) (2007) (trial court did not abuse its discretion in admitting at child molestation trial pornographic magazines possessed by the defendant entitled "Barely Legal" and "Finally Legal").

[43] That statute provides that "[i]t is error for any judge in any criminal case . . . to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."

standard.[44] That standard requires Birkbeck to show that error which is "so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding."[45] Birkbeck also complains that counsel's failure to object to the comments was ineffective assistance of counsel.

(a) Birkbeck first points to two instances in which the court referred to H. L. as "the victim." In the first instance, the court stated at the end of its preliminary jury instructions, "I'm told that the state's first witness will be the victim, [H. L.], and I'm told that [H. L.'s] testimony will be several hours long. . . ." In the second instance, the court was questioning one juror, apart from the rest of the jury, who had reported after trial was underway that he remembered H. L. waiting on him at the fast food restaurant where she worked. The court stated: "[I]t's been brought to my attention that you now recognize, but you didn't know her by name, the young lady who was the victim in this case?"

We strongly disapprove of the court referring to H. L. as the victim, particularly when Birkbeck's defense was that no victimization occurred. Nevertheless, applying the stringent plain error standard, we cannot say that the trial court's use of that term on two occasions, neither of which involved any direct commentary on the evidence in the case, likely resulted in a grave miscarriage of justice or seriously affected the fairness, integrity, or public reputation of the trial. Likewise, assuming that counsel's failure to object to the court's use of the term "victim" was error, Birkbeck cannot show the prejudice necessary to establish a claim of ineffective assistance.

(b) Second, Birkbeck complains that the trial court violated OCGA § 17-8-57 when it admonished a defense character witness to answer a question posed by the prosecutor on cross-examination. The prosecutor had shown the witness some of the incest-themed pornographic material found on Birkbeck's computer, then asked whether the witness would still believe Birkbeck to be a man of good character if he knew that Birkbeck had such material on his computer. The witness responded, "Are you assuming we have in court here? You know, assume, you're supposed to know." The court then told the witness, "[Y]ou need to answer his question if you can. The evidence about where that came from is already before the court and the jury. Where that came from according to the GBI is his computers."

---

[44] See *Patel v. State*, 282 Ga. 412, 413, n. 2 (651 SE2d 55) (2007).
[45] *Overton v. State*, 277 Ga. App. 819, 821 (2) (627 SE2d 875) (2006).

We find no error in the judge's factual summary of the testimony of the state's computer expert.[46] Because the court did not improperly comment on the evidence, it follows that defense counsel was not ineffective for failing to lodge an objection.

9. Birkbeck argues that the trial court erred by admitting the evidence of his relationship with Crystal Voght because there was no logical connection between that consensual sexual relationship and his alleged molestation of H. L. Again, we disagree. Before introducing similar transaction evidence, the state must show — among other things — that "there is a sufficient connection or similarity between the independent . . . act and the crime charged so that proof of the former tends to prove the latter."[47] In the absence of an abuse of discretion, we will not reverse a trial court's decision to admit similar transaction evidence.[48]

Georgia courts have held that evidence of the defendant's consensual legal sexual conduct may be admissible to show his bent of mind and lustful disposition toward minors.[49] Birkbeck fails to show that the court abused its discretion by admitting evidence that he was having clandestine sex with a high school student who shaved her pubic area at his request.[50]

10. During direct examination, Investigator Kennedy testified that he had met Birkbeck a few years before when Birkbeck came forward to be a character witness for Johnny Lovvorn, the cousin of H. L.'s mother, who was ultimately convicted of sodomizing his daughter. Defense counsel objected on the ground of relevance, but the trial court overruled the objection. Birkbeck now argues that the evidence about the Lovvorn case was impermissible and prejudicial character evidence. By objecting at trial on the specific ground of relevance, however, Birkbeck has waived any other grounds for objection on appeal.[51] Moreover, "an objection to the admission of evidence on the ground that it is immaterial and irrelevant is not

---

[46] See *Dixon v. State*, 196 Ga. App. 15, 18 (7) (395 SE2d 577) (1990) ("[A]n expression of opinion as to an uncontested and undisputed fact is not cause for reversal.").

[47] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[48] *Howard v. State*, 287 Ga. App. 214, 215 (651 SE2d 164) (2007).

[49] See *Phagan v. State*, 268 Ga. 272, 279 (4) (486 SE2d 876) (1997); *Mills v. State*, 251 Ga. App. 39, 39-40 (1) (553 SE2d 353) (2001).

[50] In a related claim of error, Birkbeck argues that his trial attorney was ineffective for failing to object to the similar transaction evidence on the ground that its admission violated his privacy. Birkbeck cites *Powell v. State*, 270 Ga. 327 (510 SE2d 18) (1998), but that case involved a constitutional challenge to the sodomy law. It had nothing to do with the admissibility of similar transaction evidence. In the absence of any showing by Birkbeck that a privacy objection would have succeeded, this claim of ineffectiveness fails.

[51] See *Johnson v. State*, 274 Ga. App. 641, 643 (3) (618 SE2d 716) (2005).

such an objection as it would be reversible error to overrule."[52] In any event, we are not convinced that evidence concerning Lovvorn was irrelevant, as the defense itself brought up the Lovvorn case.[53]

11. Birkbeck's remaining claims of error are additional allegations of ineffective assistance of counsel.

(a) Birkbeck maintains that his trial lawyer was ineffective for "failing to challenge the extent and foundation of the knowledge of the State's witnesses who testified as to the good character of H. L." Even assuming counsel's performance was deficient in this regard, Birkbeck fails to show prejudice. His lawyer called a parade of witnesses to testify to H. L.'s bad character, and it is improbable that any additional evidence along those lines would have resulted in a different trial outcome.

(b) Birkbeck asserts that counsel was ineffective for allowing him to take the stipulated polygraph exam. At the hearing on the motion for new trial, defense counsel testified that Birkbeck voluntarily took a polygraph test after his first trial that was administered by an expert of defense counsel's choosing. Birkbeck passed. Defense counsel shared the results of that test with the prosecutor in hopes of dissuading him from retrying Birkbeck. The prosecutor would not accept defense counsel's chosen expert, but proposed instead that Birkbeck take a stipulated polygraph administered by a different, mutually-designated expert, with the understanding that if he passed the stipulated test, the charges against him would be dropped. Defense counsel testified that he advised Birkbeck not to take the stipulated polygraph, and Birkbeck admitted that fact on the stand. But Birkbeck "wanted the case over with" and insisted on proceeding. Thus, the record shows without dispute that Birkbeck, not his lawyer, made the decision to submit to the exam, and Birkbeck has no cause for complaint.

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED JUNE 18, 2008 —
RECONSIDERATION DENIED JULY 3, 2008 — ▮▮▮▮▮▮▮▮

*Ross & Pines, Noah H. Pines*, for appellant.

---

[52] (Citations and punctuation omitted.) *Willis v. State*, 263 Ga. 70, 71 (2) (428 SE2d 338) (1993).

[53] H. L.'s mother testified that she, not her husband, had sought out the incest-themed pornography found on the computer. She testified that she grew curious about the subject when Lovvorn was accused of molesting his daughter, so she searched the internet for information about incest and child molestation. She also testified that H. L. had been privy to the details of the Lovvorn case.

*Peter J. Skandalakis, District Attorney, Kevin T. McMurry, Assistant District Attorney*, for appellee.